## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

BRIAN O.,                          :
                                   :
          Plaintiff,               :
                                   :
v.                                 : Civil No. 3:22-cv-975(MPS)
                                   :
KILOLO KIJAKAZI, Acting            :
Commissioner of Social             :
Security,                          :
                                   :
          Defendant                :

### <u>RECOMMENDED RULING ON PENDING MOTIONS</u>

Brian O. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "defendant") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated September 13, 2021. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding his case for a hearing (Pl. Br., Dkt. #21) and defendant's motion to affirm the decision of the Commissioner (Def. Br., Dkt. #24).

For the following reasons, the Court recommends that plaintiff's motion to remand should be GRANTED and the Commissioner's motion to affirm should be DENIED.

## **STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . .." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one

3

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

### **PROCEDURAL HISTORY**

Plaintiff initially filed for Social Security Disability Insurance Benefits under Title II and Supplemental Security Income Benefits under Title XVI on October 11, 2019. (R. 332.) Following an initial denial and then a denial on reconsideration, Administrative Law Judge John Aletta held a hearing on August 24, 2021. (R 104-45.) Following the hearing,

---

of these enumerated impairments, the Commissioner will automatically consider him or her disabled without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

ALJ Aletta issued a written decision denying plaintiff's application on September 13, 2021. (R. 11-28.)  Plaintiff thereafter sought review by the Appeals Council, which was denied on June 7, 2022. (R. 1-6.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #1.)

The plaintiff has filed a statement of material facts/medical chronology along with his brief. (Dkt. #21-1.) Defendant, accordingly, filed a response to the statement of material facts indicating general agreement and some additional material facts.  (Dkt. #24-1.)  The Court has reviewed, and generally adopts the facts as set forth in the parties' submissions and will not fully recite them here.  The Court will, of course, cite to specific facts and the record as needed throughout this opinion.

## THE ALJ'S DECISION

After applying the five-step evaluation process, the ALJ concluded that plaintiff had "not been under a disability within the meaning of the Social Security Act since August 1, 2012, through the date of [the] decision." (R. 12.)

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of August 1, 2012. (R. 13.) At step two, the ALJ found that plaintiff had the following severe impairments:

"brain tumors, status post craniotomy, posttraumatic headaches, degenerative disc disease of the lumbar spine with scoliosis, obesity, generalized anxiety disorder, major depressive disorder, rule out neurocognitive disorder and polysubstance abuse." (R. 14.) The ALJ additionally noted that the plaintiff suffered from a variety of conditions that were not severe: childhood leukemia, external left jugular vein thrombosis, decayed teeth, status post extractions, and Hepatitis C. (R. 14.)  The ALJ noted that plaintiff's childhood leukemia was in remission and the external vein thrombosis had been treated successfully. (R. 14.)  Additionally, plaintiff had dental implants in light of his decayed teeth and tests show no presence of Hepatitis C. (R. 14.)  Therefore, those conditions do not significantly limit the plaintiff's ability to work and are non-severe.  While not found severe, the ALJ noted that all medically determinable conditions were considered in crafting the plaintiff's RFC.

At step three, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (20 C.F.R. 416.920(d), 416.926, 416.920(d) and 416.926). (R. 14.) First, the ALJ reviewed Listing 1.15 regarding disorders of the skeletal spine which compromise a nerve root.  The ALJ found that the plaintiff did not meet the criteria.  The ALJ noted

that the record indicated radiographic evidence showing only mild degenerative changes at L5-S1 and no evidence of fracture or dislocation. (R. 14.) Additionally, the ALJ cited to portions of the record to indicate that the plaintiff had normal muscle strength and gait and did not use any assistive device to ambulate. (R. 14 (citing Ex. 4F, 5F, 9F, 15F, and 19F).)  In light of these records, the ALJ found that the plaintiff did not meet subsection D of Listing 1.15.

The ALJ also considered Listing 11.05 which pertains to benign brain tumors.  The ALJ reviewed the record and indicated that the plaintiff's neurology records showed that the "inoperable tumor remained stable." (R. 15.)  Further, the records show that plaintiff, while occasionally uncoordinated, had physical exams within normal limits.  The ALJ determined that, since the records failed to show sufficient disorganization of motor function in two extremities, or of a marked limitation in physical functioning and in one of the mental functioning areas in Part B, that plaintiff's tumor was not a severe impairment. (R. 15 (citing 2F, 11F, 12F, 15F, 16F, 20F, 21F and 23F).)

Regarding plaintiff's mental health conditions, the ALJ considered the criteria for Listings 12.02, 12.06, and 12.04. However, upon a review of treatment records and of assessments

from state agency consultants, the ALJ concluded that the

plaintiff's medical records and other evidence in the record did

not indicate sufficient symptomology to meet any of the

identified Listings. (R. 15-16. (citing Exs. 7E, 7F, 15F, 19F.)

The ALJ then found that the plaintiff had the residual

functional capacity ("RFC")

> to perform medium work as defined in 20 CFR 404.1567(c)
> and 416.967(c) with the following additional
> limitations: He can frequently climb ramps and stairs,
> cannot climb ladders, ropes or scaffolds, and can
> frequently stoop, frequently kneel, frequently crouch
> and frequently crawl. He cannot work at unprotected
> heights and cannot operate machinery having moving
> mechanical parts, which are exposed. He can perform
> simple, routine tasks, and can recall and execute simple
> routine instructions. He can tolerate occasional brief
> interaction with the general public. He can tolerate
> occasional minor changes in his work setting and work
> procedures and can set simple routine work plans.

(R. 16.) At step four, the ALJ concluded that plaintiff could

perform his past relevant work as maintenance worker and a hand

sander. (R. 21.)  Having found that the plaintiff could perform

his past relevant work, the ALJ continued the analysis to step

five.  At step five of the process, the ALJ determined that

based on the testimony of a vocational expert, there were

sufficient jobs available in the national economy that plaintiff

can perform.  Specifically, the ALJ identified the positions of

hand packager, kitchen helper, and stubber. (R. 22.)

Upon the completion of the five-step sequential evaluation process, the ALJ determined that the plaintiff was not under a disability from his amended alleged onset date through the date of the decision. (R. 22.)

## DISCUSSION

The plaintiff makes several arguments in support of his motion to reverse.  First, Plaintiff argues that the ALJ erred by failing to properly develop the record. (Pl. Br. 1-10.) Second, plaintiff asserts that the ALJ improperly weighed the evidence. (Pl. Br. 10-14.) Plaintiff also argues that the ALJ erred in his findings at step two and three of the sequential evaluation process (Pl. Br. 14-18.) Finally, plaintiff argues that the ALJ erred in his findings at step four of the sequential evaluation process. (Pl. Br. 18-25.)

### 1. The ALJ Erred by Failing to Develop the Record

The plaintiff argues that the ALJ failed, in a number of ways, to develop the record.  First, plaintiff alleges that there are a variety of records missing, or at least that there are periods of time during which it appears as though plaintiff received treatment but the record is missing any such records. Plaintiff specifically alleges that the record contains gaps because the record: (1) is missing a file associated with plaintiff's previous application for disability benefits which

had been requested to be included in this file; (2) has no medical evidence from April 9, 2012, through February 19, 2014; (3) contains a one-year gap from April 2014 through 2015 when plaintiff lived in Albany, NY; (4) has only two records from March 2017 through April 2019, when plaintiff was on pain management; and (5) has no records for an entire year prior to the hearing before the ALJ. (Dkt. #21-2 at 1-3.)

Plaintiff's second argument regarding the alleged failure to develop the record concerns the medical source opinions in the record.  Plaintiff alleges that the ALJ failed to develop the record because the record before the ALJ contained only one medical source statement from a treating source which was from LMSW Daniel Orsillo, whose treatment notes are not located in the record.  According to plaintiff, the ALJ failed to obtain medical source statements from other treating physicians to support his RFC determination. Plaintiff specifically identifies Dr. Jennifer Moliterno Gunel, Dr. Nicholas A. Blondin, and APRN Lindsey Laughinhouse. (Dkt. #21-2 at 2-3.)

The Commissioner responds to both arguments by acknowledging that the agency does indeed have "an obligation to assist claimants in obtaining medical evidence." (Dkt. 24-2 at 4.)  However, the Commissioner asserts that the ALJ met that burden by obtaining all identified and available medical records

from plaintiff's providers. Additionally, the Commissioner asserts that plaintiff was represented by counsel at the time the records were obtained and counsel confirmed that the record was complete, and that the plaintiff has failed to indicate how the allegedly missing records would have impacted the case. (Dkt. #24-2 at 5-9.) The Commissioner additionally argues that plaintiff has not shown the actual existence of any missing records and has failed to identify how they would be material to the case. (Dkt. #24-2 at 8.)

In response to the plaintiff's issue with the medical source opinions, the Commissioners argues that the record contains two consultive examinations, a medical opinion from LMSW Orsillo, medical findings from three state agency consultants, and an evaluation and opinion from neuropsychologist Lance Hart. (Dkt. #24-2 at 5-6.)  According to the Commissioner, these opinions, taken together with the treatment notes and other medical records in evidence, provide a sufficient basis for the ALJ to determine an RFC and that the ALJ did not need to secure medical source opinions from any other providers.

An ALJ has the affirmative duty to develop the record "in light of 'the essentially non-adversarial nature of a benefits proceeding.'"  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)

(quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82, 83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant."  Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir. 1996)).

The Regulations provide that an ALJ "will develop [the plaintiff's] complete medical history for at least the 12 months preceding the month in which" the plaintiff files an application for Social Security disability benefits, "unless there is a reason to believe that development of an earlier period is necessary or unless [the plaintiff] say[s] that [his or her] disability began less than 12 months before [the plaintiff] filed [his or her] application."  20 C.F.R. § 404.1512(b)(1).

The Regulations further provide that the ALJ "will make every reasonable effort to help [the plaintiff] get medical evidence from [his or her] own medical sources and entities that maintain [his or her] medical sources' evidence when [the plaintiff] give[s] [the ALJ] permission to request the reports." Id.

With regard to the alleged gaps in the record due to missing records from the periods identified by plaintiff, the

12

Court finds no error.  As an initial matter, the file from the prior application for benefits appears to the Court to be outside the relevant medical period in light of the alleged onset date of August 1, 2012.  Additionally, as identified by the Commissioner, the agency did request records as far back as 2007 and 2008. (R. 406, 984, and 1403.)  With regard to the other alleged gaps in the record, the Court finds that the plaintiff has failed to show the existence of any such records, and would thus be unable to show that if the records exist they are in fact material to the matter at hand.  Plaintiff identified a number of medical providers at the time of his application, and the Commissioner sought records from all of the identified providers. (Dkt. #24-2 at 5 and cited records.)  The ALJ's duty to request records is not unlimited. See Turcotte v. Comm'r of Soc. Sec., No. 3:17-CV-1981 (JAM), 2018 WL 6075672, at *5 (D. Conn. Nov. 21, 2018).  For instance, plaintiff notes the gap in time when he lived in Albany, but there is no identified provider outside of the State of Connecticut.  The ALJ was told by plaintiff's counsel at the hearing that the record was complete.  The ALJ was not then required to seek out potential records that may or may not exist in Albany, NY.  Additionally, only having a small number of records from a given time frame does not, in and of itself, indicate that there are records

missing.  It is entirely possible that a claimant might only seek out treatment once or twice in a given year.

With specific regard to the pain management records, plaintiff cites to an encounter on May 18, 2018 during which the Bristol Hospital emergency department notes indicate that plaintiff reported being on pain management.  (Dkt. #21-2 at 2, R. 1509.)  The Commissioner responds by referencing Yale New Haven medical records showing a series of prescription refills for pain medication.  (Dkt. #24-2 at 7.)  A review of the records indicates that during the 2018 period plaintiff was receiving refills of medication but is noted to have not been seen in the clinic since 2017. (R. 706.)  The records indicate that the plaintiff was fired from the practice for non-attendance and the doctor noted that plaintiff was to receive no more opioids from the clinic.  (R. 705-06.)

Plaintiff's argument regarding the temporal gaps in the medical record is insufficient to warrant remand of this matter. Where "[t]he plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist[,] . . . [t]hat argument is insufficient to carry his burden."  Santiago, 2011 WL 4460206, at *2 (rejecting that the ALJ was required to obtain additional medical records where the plaintiff did not attempt to obtain the medical records following the decision or indicate their importance).

However, plaintiff's argument regarding the alleged failure
to develop the administrative record does not stop with the
identified temporal gaps.  As stated previously, plaintiff also
argues that the ALJ failed to develop the record by not
obtaining medical source opinions from plaintiff's treating
sources.  The Commissioner highlights the medical opinions in
the record to indicate that the use of additional medical source
opinions in this instance was not necessary.  Additionally, the
Commissioner asserts that the plaintiff had counsel who stated
that the record was complete.  Finally, the Commissioner asserts
that the voluminous record contained sufficient medical records
from which the ALJ could deduce an appropriate and supported
RFC.

In this specific instance, the Court agrees with plaintiff
and recommends that the case be remanded to the agency for
further development of the record.

Courts within the Second Circuit and the District of
Connecticut have identified "a large body of case law holding
that an ALJ who makes an RFC determination in the absence of
supporting expert medical opinion has improperly substituted his
own opinion for that of a physician, and has committed legal
error." Staggers v. Colvin, No. 3:14-CV-717 JCH, 2015 WL
4751123, at *2 (D. Conn. Aug. 11, 2015). Indeed, "[w]here there
is such an absence of supporting medical opinion, the ALJ has an

'affirmative duty to request RFC assessments from a plaintiff's treating sources.'" <u>Decava v. Berryhill</u>, No. 3:17-CV-1834 (MPS), 2019 WL 186656, at *2 (D. Conn. Jan. 14, 2019)(quoting <u>Felder v. Astrue</u>, No. 10-CV-5747 DLI, 2012 WL 3993594, at *11 (E.D.N.Y. Sept. 11, 2012)).

"However, remand is not required when an ALJ fails to request RFC assessments if "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." <u>Decava</u>, 2019 WL 186656, at *2 (quoting <u>Tankisi v. Comm'r of Soc. Sec.</u>, 521 Fed. Appx. 29, 34 (2d Cir. 2013)). However, a court must remand "where 'the medical records obtained by the ALJ do not shed any light on the [claimant's RFC], and [where] the consulting doctors did not personally evaluate' the claimant." <u>Martinez v. Berryhill</u>, No. 3:17-cv-843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting <u>Guillen v. Berryhill</u>, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary order)). "The record is insufficient when '[t]he medical records discuss [the claimant's] illnesses and suggest treatment for them, but offer no insight into how [the] impairments affect or do not affect [the claimant's] ability to work, or [his] ability to undertake the activities of daily life.'" <u>Martinez</u>, 2019 WL 1199393, at *11 (alterations in original) (quoting <u>Guillen</u>, 697 F. App'x at 109).

In the instant case, the ALJ did discuss some medical opinions in the record that were evaluated.

First, the ALJ identified "opinions of the non-examining State agency medical consultant who reviewed the claim and the initial level." (R. 19, 148-68, and 169-89.).)  While noting that the records indicate an ability to function at a medium exertional level, the ALJ also notes that these opinions are only persuasive in part and that the consultant did not have a chance to meet with the claimant.  Further, the consultant indicated there was insufficient evidence to determine the severity of plaintiff's impairments prior to the date last insured.  Additionally, the medical record before the agency consultant at the time of review lacked available evidence showing additional limitations.  Likewise, and for much the same reasons, the ALJ found the opinion of the State agency consultant at the reconsideration level not persuasive.[4]  (R. 19,199-208.) Considering these issues these opinions appear to be of little value, based on the ALJ's own determination, regarding plaintiff's ability to function in a work setting.

Plaintiff was seen by Dr. Yacov Kogan for a consultive examination in July of 2020 and the ALJ found his report

---

[4] The Court notes that it seems, at best, odd that the ALJ found the initial State agency consultant persuasive in part yet identified the identical deficiencies while finding the State agency consultant at the reconsideration level to be not persuasive.

persuasive in part. (R. 19, 1395-1399.)  The ALJ noted that Dr.
Kogan, following a one-time examination of plaintiff, indicated
that plaintiff's

> range of motion and motor examinations were diffusely
> limited by effort and he reported a discrepancy between
> the level of functioning provided during his formal
> examination and the much better level of functioning
> he observed outside of the formal examination setting,
> which made the claimant's work limitations difficult for
> him to predict.

(R. 19.)  The ALJ concluded that because of plaintiff's apparent
refusal to cooperate, the value of Dr. Kogan's assessment of
plaintiff's physical limitations[5] was impaired.  Once again, the
Court is left to conclude that this opinion was, as indicated by
the ALJ, impaired and of questionable value.  Additionally, the
Court notes that while the medical opinion indicates plaintiff's
presentation that day, and outlines the doctor's immediate
impressions, there is no function-by-function analysis of
plaintiff's abilities in a work setting.

The record also contains a variety of evaluations and
medical opinions related to plaintiff's psychiatric condition.
As an initial matter, two consultive examinations were found to
be not persuasive by the ALJ.  (R. 20, 953-57, 1724-26.)  In the
first, Dr. Martinez, LCP, noted that she did not believe that
the plaintiff had the capacity to sustain employment.  The ALJ

---

[5] The ALJ indicated that Dr. Kogan's opinion of plaintiff's psychiatric
conditions and work ability was not persuasive because he did not have
sufficient specialized experience to opine on such issues.

noted that issue is reserved for the Commissioner and that the
opinion was contrary to records from treating sources at the
Community Health Center. (R. 20, 956, 1286-1321, 1342, 1394.)

As to the opinion of Dr. Lance Hart, Ph.D., LCP, the ALJ
found that it was not persuasive as the report, when compared
with other evidence in the record, contained discrepancies.  For
instance, plaintiff reported never working to Dr. Hart, however,
other evidence in the record would indicate that he did work in
the past. (R. 20, 363-65.)  The ALJ additionally noted that the
Mental Impairment Questionnaire from Dr. Hart, completed in
August 2021, was not persuasive. (R. 21, 1741-47.)  The ALJ
asserted that it was based on a single evaluation of the
plaintiff and that the findings were inconsistent with Community
Health Center treatment notes.  The Court notes as an initial
matter that the ALJ's assertion that Dr. Hart's questionnaire
was based on a single meeting seems to be misguided. The very
first notation on the document states it was based on several
meetings over a two-month span. (R. 1741 at question 1.)  In any
event, regardless of the number of meetings the ALJ did not find
this to be persuasive or of any value in assessing the
plaintiff's RFC.

The final medical source opinion referenced by the ALJ is
that of Daniel Orsillo, LMSW, dated 1/14/2020.  Mr. Orsillo
indicated daily visits with plaintiff for about two months, from

8/14/19-10/23/19. (R. 977.)  Mr. Orsillo indicated that the daily visits were for mediation regarding opioid use disorder and anxiety and that the treatment was complete at the time of submission. (R. 977.)   Mr. Orsillo, the only treating provider to complete a medical source opinion, found the plaintiff to be well groomed, and presenting as alert and oriented to person, place, and time, with a normal rate of speech and thought content. (R. 978.)  Plaintiff was found to have adequate judgment and insight.  (R. 978.)  In the rating section of the opinion, Mr. Orsillo marked all categories of daily living and social interaction as being a 4 or "Average ability/functioning in this area." (R. 979-80.)  However, Mr. Orsillo asserted he was unable to assess plaintiff's abilities related to task performance.  (R. 980.)  The ALJ found this opinion to be persuasive in part, because it was consistent with the treatment notes from Community Health Center, Inc.  The Court notes, however, that it is troubling that Mr. Orsillo's report is not accompanied by any treatment or progress notes.  Plaintiff indicated in his brief that he was unable to locate any such notes, and the Court was unable to locate any either. (Dkt. #21-2 at 3.)  Additionally, the Court notes that the opinion contains no indication regarding plaintiff's ability to perform the functions required for work.  While the ALJ found this to be

persuasive in part, it is of no value regarding any physical limitations placed on plaintiff.

In sum, out of all the medical opinions evaluated by the ALJ, all opinions relating to plaintiff's physical abilities were found either partially persuasive or not persuasive at all. Additionally, none of those opinions came from a treating source and only one opinion was rendered after meeting plaintiff. Regarding plaintiff's mental health capabilities, one opinion was found persuasive and one partly persuasive.  The one that was found persuasive was provided by a non-examining State agency consultant.  The partially persuasive opinion was the only medical source from a treating source but flawed as discussed above.

The Commissioner asserts that these are sufficient opinions on which to base plaintiff's RFC, in part because there is such a voluminous record regarding the skills and abilities of the plaintiff.  (Dkt. #24-2 at 6.)  The Commissioner cites to a summary ruling by the Second Circuit Court of Appeals in support of this position.  *See* Tankisi v. Comm'r of Soc. Sec., 521 Fed. Appx. 29, 34 (2d Cir. 2013).  In Tankisi, the Court, in resolving a case similar to the instant case, stated "remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the

petitioner's residual functional capacity." <u>Tankisi</u>, 521 Fed.
Appx. At 34.  The Court went on to conclude that in that
specific case the record was sufficiently voluminous and even
without treating source medical opinions, the records were
adequate to make a finding regarding an RFC.

However, cases within this district have also involved
circumstances in which, even in light of <u>Tankisi</u>, remand is
appropriate in this type of situation.  Courts have held that
"even where the ALJ obtains voluminous records, [the ALJ] cannot
substitute his opinion for that of the treating physician."
<u>Decava v. Berryhill</u>, No. 3:17-CV-1834 (MPS), 2019 WL 186656, at
*4 (D. Conn. Jan. 14, 2019.)  Upon review of the medical
opinions and the medical documents contained in the record, the
Court finds that the instant case is similar to the situation
involved in <u>Holt v. Colvin</u>, No. 3:16-CV-01971 (VLB), 2018 WL
1293095 (D. Conn. March 13, 2018.) Upon a review of the facts in
that case, the Honorable Judge Vanessa L. Bryant stated:

> This case appears similar to *Tankisi* on the surface;
> after all, there are nearly 1,000 pages of medical
> evidence, which can clearly be considered "quite
> extensive" on a superficial level. But the real import
> lies in *what* those 1,000 pages say, not the mere fact
> the records exist. And this difference changes the
> outcome. Not one treating physician opined about
> Plaintiff's functional limitations with respect to her
> ability to work, which sharply contrasts from the
> situation in *Tankisi* where the ALJ was able to rely on
> the treating physician's assessment of the plaintiff's
> limitations.

<u>Id.</u> at *7 (emphasis in original).  The Court has the very same concern in the instant case.

   For the foregoing reasons, the Court recommends that the case be remanded for further development of the administrative record. On remand, the ALJ should seek medical source opinions, ideally from treating sources, which specifically address plaintiff's functional limitations.  As previously indicated, plaintiff has identified three potential treating sources in Dr. Jennifer Moliterno Gunel, Dr. Nicholas A. Blondin[6], and APRN Lindsey Laughinhouse.  The Court additionally notes the reference to Dr. Sally Knowles who was referred to at least once as plaintiff's primary care provider.  Dr. Knowles provided treatment records in exhibit 4F. (R. 875-905.)  The Court will not, however, dictate how and from whom the ALJ should seek treating source opinions.

Because the Court considers the record to be inadequately developed, the Court will not address plaintiff's remaining arguments regarding the alleged error in the evaluation of the medical evidence, and failures at steps two, three, or four. *See, e.g.*, <u>Morales v. Colvin</u>, No. 13-cv-6844, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (declining to reach additional

---

[6] The Court highlights that Dr. Blondin already has a medical source opinion in the record before the Court, as it was submitted to the Appeals Council prior to the Council's final ruling.  The Court is not in a position to opine on the contents of that report, but it does appear to indicate treatment of a chronic headache condition that the ALJ deemed to be severe.

arguments challenging factual determinations because "the ALJ's analysis may change on these points upon remand"). The Court notes and highlights that in declining to review these issues, the Court does so in light of the possibility that the ALJ's analysis could change upon further development of the record. The Court does not in any way mean to indicate or suggest that the arguments made by plaintiff would be sufficient to warrant remand. To the contrary, it is impossible for them to be fully evaluated given the case specific deficiencies noted above.

## CONCLUSION

Based on the foregoing, the Court recommends that plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #21) should be GRANTED and the Commissioner's motion to affirm that decision (Dkt. #24) should be DENIED.

This is a recommended ruling. **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), & 72; D. Conn. L. Civ. R. 72.2(a); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995); Small v. Sec'y of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED this **13th** day of **March, 2023,** at Hartford,

Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge